UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAFFI KHATCHADOURIAN,

        Plaintiff,

    v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 23-3670 (CJN)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

THOMAS W. DUFFEY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I.          ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST ..................... 1

II.         THE FBI'S CENTRAL RECORDS SYSTEM AND SEARCH
METHODOLOGY .................................................................................................. 3

III.        FILE 192A-MP-76 WAS DESTROYED PRIOR TO THIS LITIGATION .... 6

IV.          THE FBI'S STANDARD *GLOMAR* RESPONSES ........................................ 7

V.          THE FBI'S RESPONSE TO PLAINTIFF'S REQUEST ................................... 9

LEGAL STANDARD ..................................................................................................................... 9

ARGUMENT .................................................................................................................................. 10

    I.      The FBI Conducted a Reasonable Search. ..................................................... 10

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................... 9

*Brayton v. Off. of U.S. Trade Rep.*,
  641 F.3d 521 (D.C. Cir. 2011) ............................................... 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................... 9

*Clemente v. FBI*,
  867 F.3d 111 (D.C. Cir. 2017) ......................................... 10, 13

*Defenders of Wildlife v. Dep't of Interior*,
  314 F. Supp. 2d 1 (D.D.C. 2004) ........................................ 11

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ............................ 9, 11, 12, 13

*Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ...................................... 10

*Greenberg v. Dep't of Treasury*,
  10 F. Supp. 2d 3 (D.D.C. 1998) .......................................... 11

*Jud. Watch, Inc. v. Rossotti*,
  285 F. Supp. 2d 17 (D.D.C. 2003) ...................................... 11

*Kowalczyk v. Dep't of Just.*,
  73 F.3d 386 (D.C. Cir. 1996) ............................................... 11

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................ 10

*Marks v. Dep't of Just.*,
  578 F.2d 261 (9th Cir. 1978) ............................................... 11

*McGehee v. CIA*,
  697 F.2d 1095 (D.C. Cir. 1983) ........................................... 9

*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ................................. 9, 10

*Oglesby v. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ............................................... 11

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ............................................ 10

*Phillippi v. CIA*,
  655 F.2d 1325 (D.C. Cir. 1981) ............................................ 7

*SafeCard Servs., Inc. v. SEC*,

    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 10, 11

*Valencia-Lucena v. Coast Guard,*
    180 F.3d 321 (D.C. Cir. 1999) ........................................................... 11

## **Statutes**

18 U.S.C. § 3521 ........................................................................................ 8, 9

50 U.S.C. § 3024 .......................................................................................... 8

Fed. R. Civ. P. 56 ......................................................................................... 9

Defendant, the United States Department of Justice ("Department"), respectfully submits this memorandum of points and authorities in support of the Department's motion for summary judgment in this Freedom of Information Act ("FOIA") case. Raffi Khatchadourian ("Plaintiff") has filed a complaint regarding his October 10, 2023 FOIA request seeking records regarding Greenpeace from 1976-1977.

As explained below and in the accompanying Statement of Material Facts, the Department conducted an adequate search and did not locate any responsive records.

## BACKGROUND

### I. ADMINISTRATIVE HISTORY OF PLAINTIFF'S REQUEST

By letter dated October 10, 2023, Plaintiff, on behalf of himself, submitted a FOIA request to the FBI seeking "records regarding Greenpeace, or members of Greenpeace, in the 1976-1977 general time period."[1] Plaintiff's request further specified that the records sought included the "full case file" related to Greenpeace, from which he had previously received documents from DOJ as part of a separate FOIA litigation (*Khatchadourian v. Dep't of Just.*, Civ. A. No. 22-3734 (RDM)); a copy of these documents were provided with the instant request. *See* Decl. of Michael G. Seidel, ¶ 5, and attached Ex. A ("Seidel Decl.").

By letter dated October 24, 2023, the FBI advised Plaintiff it had received Plaintiff's request and assigned it Request Number 1608591-000. *Id.* ¶ 6 and Ex. B. By email dated November 10, 2023, Plaintiff advised the FBI that he had not received acknowledgment of his October 10, 2023, request. *Id.* ¶ 7. Plaintiff asked the FBI to confirm receipt of the request and

---

[1] This letter contained a typographical error in the subject line in that it listed the subject as "Greenpeace (January 1, 1967 – December 31, 1977)" when it should have stated "Greenpeace (January 1, 1976 – December 31, 1977)

provide the status of the processing of his request.  On November 14, 2023, the FBI's Public Information Officer responded by email and advised Plaintiff of the following: that Plaintiff's request was assigned tracking number is 1608591-000; the request was currently in initial processing, whereby an assigned analyst was searching for, retrieving, and reviewing potentially responsive records; requests are processed in the order in which they are received through a multi-track processing system; and Plaintiff could continue to check the status of the request online. The FBI also informed Plaintiff that correspondence was sent to him by mail on October 24, 2023, and if he did not receive the correspondence, he should provide an updated mailing address to which the FBI could mail a new copy.  *Id.* ¶ 7 and Ex. C.

On November 15, 2023, the FBI advised Plaintiff that "unusual circumstances" applied to his request and that it would delay the FBI's ability to make a determination on the request in twenty days.[2]  The FBI offered Plaintiff the opportunity to reduce the scope of his request to potentially accelerate the processing of his request.  *Id.* ¶ 8 and Ex. D.  On December 12, 2023, Plaintiff filed the complaint. (ECF No. 1.)

On February 12, 2024, the FBI informed Plaintiff that it had conducted a  search of the locations reasonably expected to have the requested records and that it was unable to locate any responsive records. The FBI explained that although *potentially* responsive records were identified in its search, the records were destroyed in accordance with National Archives and Records Administration (NARA) and other federal regulations.  The FBI advised Plaintiff that since this material could not be reviewed, it is not known if it was responsive to Plaintiff's request.

---

[2]     Due to an administrative oversight, the FBI's October 24, 2023, and November 15, 2023, letters inadvertently identified the scope of Plaintiff's request as Greenpeace records dated January 1, 1967, to December 31, 1977; however, the FBI's later search was consistent with the parameters of Plaintiff's request and only included records within the time frame of January 1, 1976, to December 31, 1977.  Seidel Decl. ¶¶ 19-20.

The FBI noted that, although Plaintiff's request was in litigation, he could seek review of the FBI's determinations by filing an administrative appeal with DOJ's Office of Information Policy within ninety (90) days of the date of the letter, by seeking dispute resolution services by contacting the Office of Government Information Services, or by emailing the FBI's FOIA Public Liaison. *Id.* ¶ 10 and Ex. E.

## II.  THE FBI'S CENTRAL RECORDS SYSTEM AND SEARCH METHODOLOGY

Plaintiff's request seeks records on Greenpeace, or members of Greenpeace, from 1976 and 1977.  This was a subject reasonably expected to be indexed within the automated indices of the FBI's Central Records System.  Given the comprehensive nature of the information contained therein (Seidel Decl. ¶¶12-13), the Central Records System is the FBI's system of records where responsive records would reasonably be expected to be found.  *Id.* ¶ 11.

### i.      *The FBI's Central Records System*

The Central Records System is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI while fulfilling its mission and integrated functions as a law enforcement and intelligence agency, and in the fulfillment of its administrative and personnel functions. The Central Records System spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide.  *Id.* ¶ 12.

The Central Records System consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subjects.  The broad array of Central Records System file classification categories includes types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters.  For

identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the Central Record System file classification number; (b) the abbreviation of the FBI office of origin (OO) opening the file; and (c) the assigned individual case file number for the particular subject matter. Within each case file, pertinent documents of interest are "serialized," or assigned a number in the order which the document is added to the file, typically in chronological order. *Id*. ¶ 13.

### ii.    *The Central Records System's General Indices and Indexing*

The general indices for the Central Records System, comparable to a digital version of a library card catalog, function as the key to locating records within the enormous amount of information contained in the Central Records System. FBI personnel index information in the system by individual (person), organization (entity, place, or thing), or activity or event (e.g., terrorist attack or bank robbery) when information is deemed of sufficient significance to warrant indexing for future retrieval. The entries in the general indices fall into two categories:

A.    <u>Main index entry</u>: A main index entry is created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation. Main subjects are identified in the case title of a file.

B.    <u>Reference index entry</u>: A reference index entry is created for an individual or non-individual (e.g., organization, event, or activity) associated with an investigation, but who or which is not the main subject or focus of the investigation. Reference subjects are typically not identified in the case title of a file. *Id*. ¶ 14.

### iii.    *Sentinel*

FBI personnel access the general indices through Sentinel, the FBI's case management system (since July 1, 2012). Prior to Sentinel, the FBI relied on a case management system known

as Automated Case Support.  On August 1, 2018, the FBI decommissioned Automated Case Support and its indexed data was migrated into Sentinel, where these indices are accessible and searchable through Sentinel's search function. In addition to providing access to the information previously indexed via Automated Case Support, Sentinel provides a means for FBI personnel to access the FBI's older manual indices, when necessary.  *Id.* ¶ 15.

FBI personnel rely on Sentinel to locate records and other types of documents to fulfill essential functions, such as: conducting criminal, counterterrorism, and national security investigations; conducting background investigations; performing citizenship and employment queries; and administering security screenings, to include presidential protection.  Sentinel's index search methodology and function allow FBI personnel to query the Central Records System for indexed subjects in case files.  *Id*. ¶ 16.

The identification of records indexed to the subject of a FOIPA request does not automatically mean the indexed records are responsive.  Index searches using the search functions available in Sentinel are the means by which potentially responsive records are located, but ultimately, a FOIPA analyst must review potentially responsive records against the specific parameters of individual requests.  Responsiveness determinations are made once indexed records are gathered, analyzed, and sorted by FOIPA analysts who then make informed scoping decisions to determine the total pool of records responsive to an individual request.  *Id*. ¶ 17.

### iv.    *Adequacy of the FBI's Search*

### a.    *Central Records System Search and Results*

The FBI determined that a search of the Central Records System automated indices, available within Sentinel via the Sentinel and Automated Case Support search function and the manual indices, accessed via Sentinel, represented the most reasonable means for the FBI to locate

records potentially responsive to Plaintiff's FOIA request. This was because, as described, these general indices grant access to a comprehensive, agency-wide set of indexed data on a wide array of investigative and administrative subjects and consist of millions of searchable records updated daily with newly-indexed information. Specifically, as the requested subject matter predates and/or overlaps the implementation of both Sentinel and Automated Case Support, a manual indices search was required. Then, the FBI built on its manual indices search by conducting an index search of both the Automated Case Support and Sentinel indices to ensure it captured all relevant data indexed after the implementation of Automated Case Support and Sentinel. *Id*. ¶ 18.

Accordingly, in response to Plaintiff's request, the FBI conducted a search for main entries in the Sentinel, Automated Case Support, and manual indices via Sentinel's search function. The FBI searched the indices using the following terms: "Greenpeace," and "Greenpeace Inquiry" and limited its search to records created between January 1, 1976, and December 31, 1977. The FBI's search resulted in one potentially responsive file, specifically, file number 192A-MP-76. *Id.* ¶ 19.

On May 30, 2024, the FBI performed an additional search via the Sentinel, Automated Case Support, and manual indices, accessed via Sentinel's search function. The FBI searched the indices using the following terms: "Green Peace," "members of Greenpeace," and "Greenpeace," limiting its search to records created between January 1, 1976, and December 31, 1977. The FBI's search using search terms "Greenpeace", "members of Greenpeace" and "Green Peace" resulted in no potentially responsive records. *Id*. ¶ 20.

### III.    FILE 192A-MP-76 WAS DESTROYED PRIOR TO THIS LITIGATION

The FBI determined file 192A-MP-76 was destroyed on April 3, 1990, pursuant to Records Disposition Schedules approved by NARA. Since this file could not be retrieved and

reviewed, it is not known if it was responsive to Plaintiff's FOIA request. The FBI advised Plaintiff of this by letter dated February 12, 2024. *Id*. ¶¶ 10, 21 and Ex. E.

The FBI searched all repositories likely to contain responsive records, which would be in the Central Records System. Plaintiff has provided no information for the FBI to reasonably conclude that records responsive under the FOIA would reside outside the Central Records System. The Central Records System search efforts reveal no indication that responsive records would reside in any other FBI system or location. Thus, the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. *Id.* ¶ 22.

## IV.    THE FBI'S STANDARD *GLOMAR* RESPONSES

The FBI relies on a *Glomar* response to FOIA requests when acknowledging the existence or non-existence of certain categories of responsive records that would result in harm to an interest protected by one or more FOIA exemptions.[3] To be credible and effective, the FBI must assert a *Glomar* response regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records). If the FBI invoked a *Glomar* response only when it possesses responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist. This is especially important because the FBI serves dual functions as the country's main internal intelligence agency and a federal law enforcement agency. *Id*. ¶ 23.

---

[3]    The term "Glomar" refers to the subject of a FOIA request submitted to the CIA. The requester sought information concerning a ship named the Glomar Explorer, and the CIA refused to confirm or deny its knowledge of the Glomar vessel, because to do so would compromise the national security or divulge intelligence sources and methods. *Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981).

To the extent a request for records on a non-individual may implicate classified or unclassified intelligence records and acknowledging the existence or non- existence of such records would harm an interest protected by the FOIA, a *Glomar* response pursuant to Exemptions 1 and/or 3, in conjunction with the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as applicable, is asserted. *Id.* ¶ 24. To the extent a request for records implicates unacknowledged records concerning an individual, the FBI also asserts a *Glomar* response pursuant to Exemptions 1 and 3, in conjunction with the National Security Act of 1947, as applicable. Further, pursuant to Exemption 3, in conjunction with 18 U.S.C. § 3521(b)(1)(G), the FBI can neither confirm nor deny the existence of records that could identify a participant in the Witness Security Program. Moreover, pursuant to Exemption 7(E) the FBI can neither confirm nor deny the existence of an individual's name on a watch list. *Id.* ¶ 25. Finally, pursuant to Exemptions 7(D), 7(E), and 7(F), the FBI can neither confirm nor deny the existence of unacknowledged records or information concerning the use of confidential human sources in the context of a specific investigation. *Id.*

To be credible and effective, the FBI must assert a *Glomar* response regardless of whether responsive records exist (i.e., including when the FBI does not possess responsive records). If the FBI invoked a *Glomar* response only when it possesses responsive records, the *Glomar* response would be interpreted as an admission that responsive records exist. The FBI includes an addendum with each response letter which informs the requester of the FBI's standard *Glomar* position as to certain types of records, and further advises that the inclusion of the standard addendum is not an indication that records do or do not exist. Consistent with this process, the FBI incorporates by reference the standard justification for these *Glomar* responses as an exhibit to the FBI's public declarations, whether such records do or do not exist. *Id.* ¶ 26 and Ex. F.

## V. THE FBI'S RESPONSE TO PLAINTIFF'S REQUEST

In sum, the FBI performed adequate and reasonable searches for the requested records and was unable to locate responsive records. The only potentially responsive file was destroyed prior to this litigation, therefore the FBI is unable to confirm whether the record would have been responsive to Plaintiff's FOIA request. *Id*. ¶ 27.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See id.* at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citation omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citation omitted). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## ARGUMENT

### I.    The FBI Conducted a Reasonable Search.

The FBI fulfilled its obligation to conduct a reasonable search for records responsive to Plaintiff's request. An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citation omitted).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C.

2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured").
It is appropriate for an agency to search for responsive records in accordance with the manner in
which its records systems are indexed.  *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13
(D.D.C. 1998).  FOIA does not require that an agency search every division or field office on its
own initiative in response to a FOIA request if responsive records are likely to be located in a
particular place.  *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't
of Just.*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does FOIA require that an agency search every
record system.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)

Where an agency affidavit attests that a reasonable search was conducted, the agency is
entitled to a presumption of good faith.  *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d
1, 8 (D.D.C. 2004).  "To meet its burden, the agency may submit affidavits or declarations that
explain in reasonable detail the scope and method of the agency's search."  *Defenders of Wildlife
v. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).

Here, there is no material doubt that the searches performed in response to Plaintiff's
request were adequate under FOIA.  On February 12, 2024, the FBI informed Plaintiff that it had
conducted a search of the locations that could reasonably be expected to have responsive records
and that it could locate none.  Plaintiff was further advised that although *potentially* responsive
records were identified in the search, they were destroyed long ago pursuant to federal regulations,
including those of the National Archives and Records Administration.  Seidel Decl. ¶ 10, Ex. E.

The FBI conducted a search reasonably calculated to locate records responsive to
Plaintiff's request.  *Id.* ¶¶ 10, 22, 27.  The Central Records System is the FBI's principal records
system and, given its comprehensive nature and scope, any responsive records would have been
found by searching within that system.  *Id* ¶¶ 11-13.  The records system is an extensive system

of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI as part of its law enforcement mission. *Id*. ¶ 12. The records system spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide. *Id*.

Specifically, the FBI searched the Central Records System automated indices, available within Sentinel via the Sentinel and ACS search function, as well as the manual indices, accessed via Sentinel, as this was the most reasonable way for the FBI to locate potentially responsive records. *Id*. ¶ 18. The initial search sought "Greenpeace" and "Greenpeace Inquiry". *Id*. ¶¶ 18, 19. That expansive search resulted in one potentially responsive file, file no. 192A-MP-76. *Id*. But the FBI did not stop there; it conducted an additional search via Sentinel, ACS, and the manual indices using the following terms: "Green Peace", "members of Greenpeace" and "Greenpeace". *Id*. ¶ 20. The search using those terms resulted in no additional potentially responsive files. *Id*. But the FBI learned that the only potentially responsive file, no. 192A-MP-76, was destroyed on April 3, 1990, pursuant to the Records Disposition Schedules approved by the National Archives and Records Administration. *Id*. ¶ 21.

By searching the comprehensive Central Records System, the FBI searched all repositories likely to contain responsive records. *Id*. ¶ 22. This is the FBI's principal records system and, given its comprehensive nature and scope, any responsive records would have been found by searching the Central Records System. *Id*. ¶ 22.

Plaintiff has provided no information to reasonably support a possibility that responsive records would reside outside the Central Records System, and there is no indication from the records system search efforts that responsive records would reside in any other FBI system or location. *Id*. Thus, the FBI has searched all locations and files reasonably likely to contain

responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. *Id*.

In sum, the FBI "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested." *Clemente*, 867 F.3d at 117. Accordingly, Defendant is entitled to summary judgment with respect to the adequacy of the searches.

**CONCLUSION**

For these reasons, Defendant is entitled to summary judgment. A proposed order is attached.

Dated: August 30, 2024              Respectfully submitted,

                                    MATTHEW M. GRAVES, D.C. Bar #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Chief, Civil Division


                                    By:         */s/ Thomas W. Duffey*
                                        THOMAS W. DUFFEY
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-2510

                                    *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAFFI KHATCHADOURIAN,

        Plaintiff,

      v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 23-3670 (CJN)

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's Motion for Summary Judgment, any opposition thereto , and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ODERED that judgment is entered in favor of Defendant and this matter is dismissed.


SO ORDERED:


_____
Date

_____
CARL J. NICHOLS
United States District Judge